IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SETH BRYAN,

     Plaintiff,

v.                                                              Civ. No. 21-456 GBW

KILOLO KIJAKAZI, *Acting*
*Commissioner of the Social Security*
*Administration*,

     Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI"). *Doc. 18*. For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSDI on June 10, 2019, alleging disability beginning March 31, 2019. Administrative Record ("AR") at 175. Plaintiff's application was denied on initial review on August 16, 2019, AR at 75, and again on reconsideration on June 12, 2020, *see* AR at 98. On November 10, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 32-74. The ALJ issued an unfavorable decision on December 15, 2020. *See* AR at 7, 21. Plaintiff sought review

from the Appeals Council, which denied review on March 18, 2021, AR at 1, making the

ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On May 13, 2021, Plaintiff filed suit in this Court, seeking review and reversal of

the ALJ's decision. *See doc. 1.* On October 29, 2021, Plaintiff filed his Motion to Reverse

the Administrative Law Judge (ALJ's) Unfavorable Decision Dated December 15, 2020,

or Alternatively, to Remand the Case Back to the Administrative Law Judge. *See doc. 18.*

The Commissioner responded on March 2, 2022. *See doc. 25.* Briefing on Plaintiff's

Motion was complete on March 18, 2022, *see doc. 27*, with the filing of Plaintiff's reply,

*see doc. 26*.

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.* at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.   ALJ EVALUATION

### A.  <u>Legal Standard</u>

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.  If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

4

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On December 15, 2020, the ALJ issued a decision denying Plaintiff's application for SSDI benefits.  *See* AR at 7.  In denying Plaintiff's application, the ALJ applied the five-step sequential analysis.  At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since March 31, 2019, the alleged onset date."  AR at 12. At step two, she found that Plaintiff has the following severe impairments:

> left shoulder labral tear and degenerative joint disease (DJD); right hip labral tear; bilateral knee DJD; thoracolumbar degenerative disc disease (DDD); chronic pain syndrome; left sensorineural hearing loss; tachycardia; left cubital tunnel syndrome; traumatic brain injury (TBI); obesity; pain disorder with related psychological factors; depressive disorder; and post-traumatic stress disorder (PTSD).

AR at 12.  She also noted that Plaintiff has other impairments, including hypertension, femoroacetabular impingement, tinnitus, sleep apnea, an impairment of the kidneys, and migraines, but found these impairments non-severe.  AR at 13.  At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination— did not meet or equal the severity of an impairment in the Listings.  AR at 13-15.

5

At step four, the ALJ found that Plaintiff does not have the RFC to return to his past employment as a paramedic (Dictionary of Occupational Tables ("DOT") 079.374-010), AR at 19, but does have the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), subject to several physical and mental limitations, AR at 15.  With respect to physical limitations, the ALJ found that Plaintiff can frequently finger, handle and feel with the left non-dominant extremity; occasionally balance, stoop, crouch, kneel, crawl, climb ropes and stairs, reach overhead with the left non-dominant upper extremity, and use foot controls bilaterally; and never climb ladders, ropes, or scaffolds, be exposed to unprotected heights or hazardous machinery, or operate a motor vehicle for commercial purposes.  *Id.*  The ALJ additionally found that Plaintiff can handle work environments with a noise level of moderate or less and can perform simple, routine tasks with no fast-paced production work.  *Id.*

With regard to mental limitations, the ALJ found that Plaintiff can make simple work decisions, occasionally interact with coworkers and supervisors, and rarely (defined as less than 10% of the workday) interact with the general public, and that his "work should be performed in the same location every day."  *Id.*

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting

effects of his symptoms were not entirely consistent with the medical evidence and the other evidence in the record.  AR at 16.  Specifically, the ALJ found that the objective medical evidence was "not entirely consistent with [Plaintiff's] allegations of debilitating symptoms," and that such evidence outbalanced the evidence of restrictions in Plaintiff's daily activities. AR at 18.  The ALJ found the prior administrative medical findings of state medical consultants Dr. Fleming, and Dr. Berman partially persuasive.  AR at 18-19.  She found the prior administrative medical findings of state psychological consultants Dr. Sorensen and Dr. Blacharsh persuasive with the exception of portions of their medical findings, and she elucidated her reasoning for finding those portions unpersuasive in her opinion.  *See* AR at 19.

### C. ANALYSIS

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because (1) the evidence that Plaintiff is disabled due to his shoulder, lower back, and right hip impairments, in combination with his knee and mental impairments, is "overwhelming," *doc. 19* at 7-13; (2) the ALJ failed to consider whether Plaintiff's various impairments, when considered together, would result in a finding of disability, *id.* at 13-15; and (3) the ALJ failed to adequately explain her finding that Plaintiff's subjective symptom allegations were not fully consistent with other evidence in the record, *id.* at 15-19.  Plaintiff further asserts—based on his arguments for why the

decision is not supported by substantial evidence—that the ALJ erred in finding that the Commissioner carried her burden at step five to demonstrate the existence of a substantial number of jobs for Plaintiff in the national economy. *Id.* at 19-20.

Defendant responds that the ALJ's decision should be affirmed because substantial evidence supports the limited RFC that the ALJ assigned Plaintiff, *doc. 25* at 10-18, and the ALJ did not improperly shift the applicable burden of proof to Plaintiff at step five and properly relied upon the vocational expert's testimony which was based on the ALJ's RFC finding, *id.* at 19-20. The Court agrees with Defendant.

A. **The ALJ's Decision is Supported by Substantial Evidence.**

The Court finds that substantial evidence supports the ALJ's RFC determination because it is not overwhelmed by other evidence in the record, the ALJ properly considered the cumulative impact of Plaintiff's multiple impairments on his RFC, and the ALJ did not err in how she evaluated Plaintiff's subjective testimony about his symptoms.

1. **The ALJ's RFC determination is not outweighed by evidence in the record.**

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because it is outweighed by evidence in the record. *See doc. 19* at 7-13. Plaintiff emphasizes that the evidence in support of total disability due to Plaintiff's left shoulder, right hip, lower back, knee, and mental impairments is "overwhelming"

and that the ALJ addressed Plaintiff's physical impairments "summarily." *See id.* at 13.

In evaluating whether the evidence supporting an ALJ's decision is substantial, the Court "meticulously examine[s] the record . . . , taking 'into account whatever in the record fairly detracts from its weight.'" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). However, the Court's function is "neither [to] reweigh the evidence nor [to] substitute [its] discretion for that of the Commissioner." *Id.* (quoting *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995). Under substantial evidence review, "the threshold for . . . evidentiary sufficiency is not high," and the substantial evidence standard is met when a conclusion is supported by "more than a mere scintilla" of evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Upon a careful review of the record, the Court finds that more than a scintilla of evidence supports the ALJ's RFC finding. When discussing Plaintiff's left shoulder, the ALJ noted that although an October 2018 MRI showed severe degenerative changes, other imaging and testing showed normal or mildly abnormal results. AR at 17 (citing AR at 667, 673, 816. The ALJ also noted that Plaintiff has demonstrated tenderness in his left shoulder and was unable to do a lift-off test on one occasion, but otherwise has had normal or only mildly reduced strength testing. *Id.* (citing, *inter alia*, AR at 671, 1590). Finally, the ALJ noted treatment notes recording normal reflexes and normal or

mildly reduced sensation.  *Id.*  With regard to Plaintiff's right hip impairments, the ALJ

noted Plaintiff's hip irritation with flexion past 90 degrees, but also noted that Plaintiff's

right hip has full range of motion, no tenderness, and that Plaintiff's "lower extremity

strength has been no more than mildly abnormal (save for the knees)."  *Id.*  Based on

this evidence, the ALJ assessed additional physical limitations in addition to a limitation

to light work.  *See* AR at 15.  Therefore, the Court finds that substantial evidence

supports the ALJ's RFC as it relates to Plaintiffs' limitations arising from his left

shoulder and hip pain.[1]

Turning to Plaintiff's lumbar pain, Plaintiff argues that the ALJ's RFC is against

the weight of the evidence because Plaintiff's pain is greater than the pain described by

the ALJ.  *See doc. 19* at 10.  The Court disagrees that the evidence of Plaintiff's pain from

his lumbar impairment overwhelms the evidence supporting the ALJ's RFC.  While

making her finding that a limitation to light work would accommodate Plaintiff's

lumbar pain, the ALJ noted, *inter alia*, Plaintiff's allegation that he "must be at least

---

[1] Plaintiff takes issue with the ALJ's approach of "only consider[ing] medical records up to 1 year prior to her decision" on the basis that such an approach "doesn't describe the worsening and degenerative nature [of Plaintiff's impairments] over a longer period of time."  *Doc. 19* at 9.  The Court notes that this is not an accurate characterization of the ALJ's approach.  The ALJ did not fail to consider medical records pre-dating her decision by more than one year; she considered but gave little weight to records that pre-dated the *alleged onset date* by more than one year.  *See* AR at 12-13.  Given that Plaintiff's alleged onset date is March 31, 2019, *see* AR at 21, the ALJ considered without discounting the probative value of any records dated March 31, 2018, through December 15, 2020.  SSA regulations impose no duty on ALJs to develop a record of a claimant's medical history that extends beyond 12 months prior to the date a claimant filed the application for benefits.  *See* 20 C.F.R. § 404.1512(b)(1).  Here, where Plaintiff filed his application on June 10, 2019, the ALJ did not breach her duty to develop the record on the basis of her decision to assign less probative weight to records date prior to March 31, 2018.

semi-reclined for the pain to be bearable," and that he has limited range of motion.  *See* AR at 16.  She also relied, however, on evidence that demonstrated no more than moderately abnormal imaging results as well as findings that Plaintiff has normal gait from all of Plaintiff's medical providers, save for one, who commented on his gait.  *See* AR at 16-17, 19 (citing AR at 431, 438-39, 1747-49, 2392, 2394, 2399).  Based on these findings, the Court concludes that more than a mere scintilla of evidence supported the ALJ's RFC finding and therefore declines to revisit how the ALJ weighed conflicting evidence concerning Plaintiff's lumbar impairment.

Plaintiff also argues that the ALJ's RFC was not supported by substantial evidence because Plaintiff's medical records "establish that Plaintiff's knee pain was worsening."  *Doc. 19* at 11.  Plaintiff does not clearly argue how the worsening nature of his knee pain contradicts the RFC assessed by the ALJ, which incorporates limitations due to Plaintiff's knee pain, *see* AR at 15, 19 (stating that the ALJ assessed an additional exertional limitation to occasionally using foot controls bilaterally based on the evidence of Plaintiff's knee pain), but the Court nevertheless determines that substantial evidence regarding Plaintiff's knee pain supports the ALJ's RFC assessment.  Specifically, the ALJ noted that despite Plaintiff's left knee pain, that pain was intermittent, and weakness in his left knee was also intermittent.  *See* AR at 17 (citing AR at 661-62, 715-16, 761, 1590).  The ALJ also noted that Plaintiff's right knee signs

were generally normal, and that imaging done of Plaintiff's left knee in October and December of 2018 was no more than mildly abnormal.  *See id.* (citing AR at 663, 716-19, 763-64).  These findings are sufficient to satisfy a reasonable mind that no greater limitations than those assessed by the ALJ for Plaintiff's knee pain were warranted, so the Court affirms the ALJ's findings on this issue.

Finally, Plaintiff argues that the evidence in the record of his mental limitations overwhelmingly contradicts the mental RFC the ALJ assigned him.  In particular, Plaintiff emphasizes his previous subjective symptom reports concerning his poor memory and hearing loss; symptoms arising from PTSD and depression; the contribution of his "chronic pain in his back, shoulders, hip and knees" to his mental distress; and "interpersonal difficulties [he experiences] as a result of his irritability and stress."  *See doc. 19* at 13.  Having conducted a thorough review of the evidence of Plaintiff's mental symptoms in the record, the Court concludes that this evidence does not overwhelmingly contradict the ALJ's mental RFC assessment.[2]  In assessing

---

[2] Plaintiff also takes issue with the ALJ's assessment of moderate rather than marked limitations for the four Listing 12.04(b) criteria.  *See doc. 19* at 12.  The Court notes that this argument is a challenge to the ALJ's findings at step three, rather than a substantial evidence challenge to the RFC assessed by the ALJ at step four.  To the extent Plaintiff is bringing a separate step three challenge to the ALJ's findings about the severity of Plaintiff's mental symptoms, the Court finds that substantial evidence supports the ALJ's assessment of moderate rather than marked limitations, because the ALJ linked her determinations about the severity of Plaintiff's various mental limitations to specific evidence in the record.  *See* AR at 14 (noting, *inter alia*, no findings of memory loss or other cognitive issues during Plaintiff's mental status exams, a mixed record with regard to Plaintiff's ability to interact with others, indications in Plaintiff's records that his thought process and thought content has been largely normal, and that Plaintiff's level of insight has been recorded as good and he has not demonstrated homicidal or suicidal ideation).

Plaintiff's mental RFC, the ALJ also relied upon and discussed the lack of objective

medical evidence showing impairments to Plaintiff's concentration and memory;

normal thought process, and evidence that Plaintiff's psychotropic medications caused

his depression and anxiety to improve, among other evidence. *See* AR at 18.  The Court

finds that this evidence constitutes substantial support for the ALJ's mental RFC.

2. **The ALJ's decision indicates that she considered the cumulative effect of Plaintiff's impairments.**

Plaintiff next argues that the ALJ failed to consider the cumulative effect of

Plaintiff's impairments in contravention of the requirement that she do so set forth in 20

C.F.R. § 404.1523(c) and explicated in *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.

2014).  *See doc. 19* at 14.  Plaintiff argues that the ALJ failed to discharge her obligation to

consider Plaintiff's physical and mental impairments cumulatively by failing to

consider that Plaintiff's "physical impairments have contributed to the deterioration of .

. . Plaintiff's medical impairments." *Id.*  The Court disagrees and finds that the ALJ

adequately considered the combined effect of Plaintiff's physical and mental

impairments.

At step three, the ALJ "consider[s] the combined effect of all of [a claimant's]

impairments without regard to whether any such impairment, if considered separately,

would be of sufficient severity."  20 C.F.R. § 404.1523.  If the ALJ finds that a medically

severe combination of impairments exists, the ALJ "will consider the combined impact of the impairments throughout the disability determination process." *Id.*

At step four, "in formulating [her] RFC assessment, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere." *Alarid v. Colvin*, 590 F. App'x 789, 797 (10th Cir. 2014) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)). "When an 'ALJ indicates she has considered all the evidence, [the Court's] practice is to take the ALJ at her word.'" *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)). However, an ALJ's decision must contain sufficient explanation to permit a reviewing court to determine what evidence the ALJ relied upon in reaching her determination; an unsupported statement that the ALJ considered the effects of a particular impairment in conjunction with other impairments is inadequate. *See, e.g., Rodriguez v. Colvin*, CV 13-0978 WPL, 2014 WL 12789016, at *5-7 (D.N.M. Aug. 19, 2014).

To the extent Plaintiff argues that the ALJ did not consider the combined effect of Plaintiff's various mental and physical impairments at step three, the Court disagrees. The ALJ considered whether the combined effect of Plaintiff's physical and mental limitations satisfied the Listings for peripheral neuropathy (11.4), or traumatic brain injury (11.18), and determined that the evidence did not establish the requirements for these listings. AR at 14. The ALJ also considered the combined effect of Plaintiff's

14

obesity with his other impairments and determined that the combined effect of such impairments did not medically equal a listing.  *Id.*  Finally, the ALJ's statement that Plaintiff's "chronic pain syndrome and pain disorder with related psychological factors were also considered" when she made her step three findings rebuts Plaintiff's argument that the ALJ did not consider the effect of Plaintiff's physical symptoms on his mental symptoms.  *Id.*  Therefore, the Court is not convinced that the ALJ failed to consider that Plaintiff's physical pain may cause some of his mental symptoms at step three.

Additionally, the ALJ adequately considered the combined effect of Plaintiff's physical and mental symptoms when assessing his RFC.  The ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  AR at 15.  She also listed all of Plaintiff's impairments, including "back pain radiating into the lower extremities; shoulder pain; hip pain; knee pain; hand pain; hearing loss; exhaustion; dizziness; and mental symptoms, including cognitive problems, post-traumatic symptoms, anxiety, and depression," and "difficulty sleeping."  AR at 16.  The ALJ noted the symptoms Plaintiff alleges he experiences as a result of those impairments, *see id.*, in addition to discussing the medical and non-medical evidence while discussing those impairments separately, *see* AR at 16-19, prior to arriving at an

RFC "consistent with these evidentiary considerations," AR at 19.  The ALJ also assessed further restrictions and environmental limitations based on Plaintiff's knee pain, postural limitations, shoulder labral tear, and sensorineural hearing loss." AR at 19.  With regard to Plaintiff's mental limitations, the ALJ stated that she assessed Plaintiff's mental RFC based on "evidentiary considerations" from "the record as a whole," *id.*, and explained her rationale for not assessing a more restrictive mental RFC, AR at 18-19.  Based on the foregoing, the Court is satisfied that the ALJ adequately considered the cumulative impact of Plaintiff's severe and non-severe mental and physical impairments.

Moreover, given that the ALJ adequately incorporated Plaintiff's mental limitations into his RFC, the Court is unconvinced that the ALJ would have assessed a more restrictive RFC if she had discussed the possibility that Plaintiff's physical symptoms contribute to his mental symptoms in more explicit terms.  For instance, Plaintiff asserts that his physical pain contributes to his depressed mood and decrease in sleep.  *Doc. 19* at 14.  In her decision, the ALJ explicitly discussed Plaintiff's depressed mood, affect, and cognition, including by noting that Plaintiff has shown "intermittent mood and affect abnormalities, including depressed mood and agitation."  AR at 18. However, the ALJ also noted that Plaintiff's depression is improved by taking psychotropic medications and that there have been "no other findings of impaired

16

concentration, attention span, etc." and that Plaintiff has shown a normal thought

process, fair to good judgment, and good insight. *Id.* Therefore, the Court finds that the

ALJ accounted for the mental limitations that Plaintiff alleges stem from his concurrent

physical limitations and disagrees that the ALJ's cumulative RFC assessment is

inadequate.

### 3. The ALJ's finding that Plaintiff's subjective symptom testimony was not entirely consistent with other record evidence was supported by substantial evidence.

Plaintiff's third argument is that the ALJ failed to consider all of the evidence

when partially discounting Plaintiff's subjective symptom allegations. Specifically,

Plaintiff argues that the ALJ's adverse credibility determination is not supported by the

entire record because portions of Plaintiff's hearing testimony were "uncontradicted."

*Doc. 19* at 15. The Court finds that the ALJ did not ignore uncontradicted hearing

testimony from Plaintiff when discounting parts of his subjective allegations.

SSA regulations prescribe a two-step process for evaluating a claimant's

statements about their mental impairments. Step one asks "whether there is an

underlying medically determinable . . . mental impairment(s) that could reasonably be

expected to produce [the] individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *3

(Oct. 25, 2017); 20 C.F.R. § 404.1529(b). If such an impairment is established at step one,

step two requires the ALJ to "evaluate the intensity and persistence of those symptoms

to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*; 20 C.F.R. § 404.1529(c).  In making that assessment, the agency "consider[s] all of the available evidence from [the individual's] medical sources and nonmedical sources about how [his or her] symptoms affect [him or her]," including medical opinions, objective medical evidence, and "any other information [the individual] may submit about [his or her] symptoms."  20 C.F.R. § 404.1529(c). "[T]he 'RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts . . . and nonmedical evidence."  *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (emphasis added) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

The Court identifies the following subjective symptom allegations in the large portion of the administrative hearing transcript cited by Plaintiff in his Motion:

(i)   Plaintiff's back pain requires him to be in a semi-reclined position "for it to be bearable," causes pain that is "murderous" when standing and walking, radiates down his back to his ankle, and has not responded to medical branch blocks, *see doc. 19* at 16;

(ii)   Plaintiff is unable to do various household tasks, including those related to personal care and daily household chores, due to all of his physical symptoms, *see id.* at 17;

(iii)  Plaintiff's left shoulder pain prevents him from lifting weights, *id.* at 18; and

(iv)  Plaintiff's mental symptoms cause him to "hav[e] a hard time dealing with people" and "keeping [his] temper under control;" include symptoms from PTSD and depression; and cause him to avoid leaving his house.  *See id.* at 17-18.  The "shock" Plaintiff experienced when transitioning from a military

career to civilian life makes it difficult for him to "care about stuff."  *See id.* at
18-19.  Additionally, Plaintiff has difficulty concentrating and reading due to
poor memory.  *Id.* at 19.

The Court finds that the ALJ did not err by failing to fully incorporate these

alleged symptoms in Plaintiff's RFC.  With regard to Plaintiff's back pain, its effects on

his ability to stand and walk, and Plaintiff's alleged limitations in performing

household activities, the Court disagrees that Plaintiff's allegations were

"uncontradicted" and finds that the ALJ adequately discussed Plaintiff's allegations and

her reasons for not fully crediting them.  The ALJ acknowledged that Plaintiff alleges

"back pain radiating into the lower extremities" and that he can "sit no more than 5-10

minutes, can stand no more than 5-10 minutes, and can walk no more than a block, or

about 10 minutes."  AR at 16.  The ALJ also explicitly acknowledged that Plaintiff

"states he must be at least semi-reclined for the pain to be bearable" and "reports using

a cane."  *Id.*  The ALJ did not fully credit these symptoms because of contradictory

objective medical evidence, such as lumbar and thoracic X-rays and MRI with "no more

than moderately abnormal results," AR at 16 (citing, *inter alia*, AR at 431, 438-39, 1747-

1750), the fact that "[t]he record contains no prescription or other statement of medical

necessity for any assistive device," *id.* at n.2, the fact that all of Plaintiff's medical

providers who commented on his gait, except for one, found that it was normal, AR at

18-19, and "a substantial body of pertinent normal clinical signs, such as normal or

mildly reduced strength," AR at 19, and conservative treatment, *id.*  With regard to

Plaintiff's testimony concerning his limitations in undertaking various household tasks,

the ALJ found that testimony to also be contradicted by the above-mentioned objective

medical findings.  *See* AR at 18-19.  Therefore, the Court finds that the ALJ adequately

discussed how she weighed the medical and non-medical evidence in finding that

Plaintiff's back pain and ability to perform household tasks was less limiting than he

alleges.

Turning to Plaintiff's argument that the ALJ erred by not adequately explaining

her evaluation of Plaintiff's testimony that his left shoulder pain prevents him from

lifting weights, the Court disagrees that the ALJ ignored evidence in partially

discrediting this testimony.  First, it appears that the ALJ credited Plaintiff's testimony

about his inability to reach overhead with his left arm to a large extent, because at step

five, the ALJ explained that the representative occupations that she determined Plaintiff

would be able to perform were not inconsistent with a limitation to only "occasionally

lifting overhead on the left."  AR at 21.  To the extent the ALJ's limitation to occasional

reaching is inconsistent with a limitation of never reaching overhead with the left

shoulder, the Court notes that the ALJ explicitly discussed objective medical evidence

demonstrating that Plaintiff had some ability to use his left arm and shoulder.  *See* AR at

17 (discussing clinical findings pertinent to Plaintiff's ability to reach with his left arm

and shoulder).  Therefore, the ALJ satisfied her obligation to consider all the available

evidence when evaluating Plaintiff's subjective allegations about his left shoulder pain.

*See* SSR 96-8p, 1996 WL 374184, at *7.

Finally, the Court finds that the ALJ adequately explained her decision to assess

a mental RFC for Plaintiff that is not fully consistent with his alleged mental limitations.

The mental RFC assessed by the ALJ partially credited Plaintiff's allegations that he

"[has] a hard time dealing with people," leaving his house, and "keeping [his] temper

under control, *see, e.g.*, AR at 50, by limiting him to only occasionally interacting with

coworkers and supervisors and rarely interacting with the general public (less than 10%

of the workday), *see* AR at 15.  To the extent the mental RFC assessed by the ALJ was

inconsistent with a total inability to interact with coworkers and the public, the ALJ

discussed the specific evidence she relied upon in making those findings, namely, the

lack of treatment notes from Plaintiff's psychiatric providers indicating that he had

impaired cognition or attention span, and treatment notes indicating that Plaintiff

showed normal thought process, "fair to good" judgment, good insight, and was

cooperative.  AR at 18.  With regard to Plaintiff's allegations that he is disabled due to

his depression and PTSD, the ALJ noted that his "medications are effective in

controlling his symptoms," based on evidence in his medical records showing that

"once [he] agreed to take psychotropic medications; his anxiety and depression

improved dramatically." *Id.* (citing AR at 1919-1920, 2038, 2040).  Finally, the ALJ did

not disregard Plaintiff's hearing testimony that he has difficulty concentrating and

reading due to poor memory; she stated that she made allowances for Plaintiff's and his

wife's allegations that he experiences memory problems that affect this daily life,

despite noting the lack of evidence for such problems in Plaintiff's mental status exams.

*See* AR at 14 (assessing a moderate limitation in understanding, remembering, or

applying information).  Therefore, the Court finds that the ALJ properly evaluated

Plaintiff's subjective symptom allegations against the other evidence in the record and

adequately explained her reasoning for finding parts of Plaintiff's allegations

inconsistent with that evidence.

    **B.**  <u>**The ALJ's Determination that the Commissioner Carried Her Burden at Step Five Was Not an Abuse of Discretion.**</u>

     Plaintiff's final argument is that the ALJ erred in finding that the Commissioner

carried her burden at step five to show that Plaintiff has the RFC to perform work

available in the national economy, because such finding was contrary to the evidence of

Plaintiff's physical and mental limitations in the record "[f]or all of the reasons set forth

in [Plaintiff's preceding arguments]."  *See doc. 19* at 19-20.  Having found that the RFC

assessed by the ALJ is supported by substantial evidence for the reasons explained at

greater length above, the Court rejects this argument.  At the administrative hearing,

the ALJ asked the vocational expert whether there were jobs in the national economy a

hypothetical claimant with Plaintiff's RFC could perform, and the vocational expert

provided testimony concerning the three representative occupations listed in the ALJ's

decision.  *See* AR at 20, 70.  Moreover, the Court rejects Plaintiff's argument to the extent

Plaintiff asserts that the Commissioner did not carry her burden because the RFC

assessed by the ALJ contained limitations additional to an RFC limiting him to the full

range of light work.  *See doc. 19* at 19-20.  The ALJ included these additional limitations

in the hypothetical she asked of the vocational expert at the administrative hearing, so

the representative occupations that the vocational expert identified included them.  *See*

AR at 20, 70.

Finally, the Court does not find an error based on the fact that the ALJ "made no

mention of . . . sedentary jobs" when finding that Plaintiff could do three representative

occupations consistent with a limitation to light work with additional limitations.  *See*

*Doc. 19* at 20.  As Plaintiff acknowledges, a determination that a claimant can perform

"light work" is necessarily indicative that the claimant can also do sedentary work.  *See*

*id*. (citing 20 C.F.R. § 404.1567).

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's RFC finding is

supported by substantial evidence and that the ALJ did not err in finding that the

Commissioner carried her burden at step five.  Therefore, the Court hereby DENIES

Plaintiff's Motion to Reverse the Administrative Law Judge (ALJ's) Unfavorable

Decision Dated December 15, 2020, or Alternatively, to Remand the Case Back to the

Administrative Law Judge (*doc. 18*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**